All rise. Please be seated. Good afternoon. The first case for oral argument is People v. Fenton. Counsel, whenever you're ready, you may proceed. Thank you. May it please the Court. Counsel. My name is Amanda Warner from the Office of the State Appellate Defender. Today I represent Mr. Garfield Fenton. Your Honor, there's really only one issue in this case, and that is whether there is a limit to defense counsel's ability to agree to continuances based upon the State's failure to tender discovery. And it's brief. The State talks about Garfield's counting and how he can't reach 120 days or how he's made these calculations. But let's simplify this today. Garfield has not, nor has he ever argued, that he can get past 120 days without a finding by this Court that counsel is ineffective. Therefore, the only real issue is whether trial counsel fails to protect Garfield's speedy trial rights by agreeing to unreasonable continuances in the face of the State's failure to tender discovery. Garfield also isn't here today to dispute the Blackletter Law regarding speedy trial or trial strategy, certainly delays occasioned by the defendant should be charged to the defendant. But likewise, delays occasioned by the State and their failure to produce discovery should be attributed to the State. Similarly, wide latitude should be given to trial counsel when deciding whether or not to agree to a continuance. But there should be a boundary on that. It should be reasonable strategy. There simply has to be a limit, Your Honors. In Garfield's case, the record is clear that the State failed to turn over discovery to defense counsel, specifically DNA and fingerprint evidence. The State had the material in its possession beginning in July, and it did not turn it over to defense counsel until April 1st. By its own admission, the State took no action to process this DNA and fingerprint analysis from July until sometime in October and November, and then again in December. It took no action from December until March. And at that point, we were merely weeks away from trial. Two weeks before the proposed trial date, the State had still not turned over the discovery. And when questioned by the trial court, it was clear that for months upon months, the State had taken no action. During this time, the record also makes clear that defense counsel was frustrated by the State's delays. At one point, counsel demanded a speedy trial and put on the record that it was doing so in order to compel the State to produce discovery. But then defense counsel withdrew that unreasonably when the State set a trial date for December. And as the record bears out... I didn't understand. I'm not sure that the defense counsel understood what he was doing when he filed the motion for speedy trial and then withdrew it. Why would he withdraw it? He shouldn't have, Your Honor. I agree he didn't understand what he was doing. He was being unreasonable, which is really the thrust of Garfield's argument. He wanted to compel the State to turn over this discovery. And in context, this discovery was very important because a lot of the case premised on the State's ability to prove that Garfield was in the room, but not just in the room, that he actively participated. His DNA and fingerprint analysis from 11, for example, would greatly have enhanced the State's case. And yet the State hadn't turned over that information. So, counsel made the right move. He filed a demand for speedy trial, trying to force the State to its burden. And then he inexplicably and unreasonably withdrew that simply because, well, it's not clear. He was the defendant present, you know. He was present. And was the defendant present at all of the continuances, do you know? He was present, Your Honor. And that's an interesting point because normally we would say, well, the defendant had a burden to speak up, right, because he's been admonished about his speedy trial. And independent of his counsel, he could speak up. But the record is also clear that the trial court didn't properly admonish Garfield that he had the right to a speedy trial. And, in fact, he was affirmatively told that what counsel was doing in this particular case was correct. At one instance when, in the record, the continuance is being attributed to the State's failure to tender discovery, the trial court even admonishes Garfield, hey, your counsel needs this to make pretrial motions, and that's acceptable. That's something that we would attribute to you. So he's being affirmatively told that this is what is supposed to happen. But when you actually look at the record, defense counsel never filed pretrial motions. And, in fact, he went on the record and said he had none to file based on the discovery that he had before him at the time. He couldn't do any more until the State finished their discovery. We also know from the record that normally defense counsel might have been engaged in negotiations, and this might be another reason why he would have agreed. But, again, we know from the record defense counsel was very clear. The State was refusing to engage in negotiations beyond the very general until the discovery was turned over. And, again, that makes sense because depending on how that discovery turned out would greatly have impacted the State's ability to prosecute. This might not have been the only evidence, but it was certainly key evidence, and I don't think there's any dispute about that. So counsel and Garfield were literally at a standstill while this was going on. Counsel can't file pretrial motions. He can't negotiate. And yet the State has allowed for months and months to sit on this evidence. And it's clear that the State was negligent. The State admitted to the trial court that it took no action from July to October, maybe the first of November. And then, again, when it sent an order over in December, it never checked to make sure the lab had that consumption order. It never followed through. And the first time it followed through, again, was in March, which, again, were weeks in front of the trial date. Is it true that after the DNA was procured that the defendant then filed for a couple of continuances? It is true that they did not go immediately to trial, not because defense counsel wasn't ready, but there was some conflict between scheduling. Defense counsel already had some jury trials on the schedule. So defense counsel didn't take continuances to file motions or anything like that. It's clear that these continuances were being taken, one, because of a pre-scheduled vacation or trip, I'm not sure the purpose, but also because he had another jury trial set and another forum. So these were not delays that were taken because the State failed to – because he needed those delays to finish prosecuting the case. That's also evident by the fact that he filed no pretrial motions. He didn't go get an expert. Essentially, once he realized what that evidence was, there was nothing else that he did. And Garfield went to trial. I believe that this was turned over in April, and the jury trial was in September. So there was just a short time period there because of conflicts. Anyway, Your Honors, the State's brief argues that because Garfield agreed to these continuances, it mattered little what steps the State took to turn over the discovery, and that is precisely the problem. In these situations, there normally are checks and balances. The State has a duty to complete discovery in a timely fashion. And when the State doesn't do that, defense counsel has to stand in that gap. The defense counsel has to put the State to its burden, and the statute allows for that. Even if the lab takes too long, the statute allows for the State to seek additional time, if the State can show due diligence, as this Court pointed out in People v. Fouls, though it would have been difficult in this case given the months of delay. And even when defense counsel falls down, there's normally a check and balance, and if the trial court stands in the gap, it monitors Garfield and his presence. And then Garfield, because he is present, is allowed to say, hey, this is not okay with me. But again, the trial court failed to properly carry out its duty there as well. Do you have any cases that support this position that you have, that despite the fact that the defendant agreed to the continuances? I don't, Your Honor. Would it be better to have this raised in a post-trial, in a PC, where it could be flushed out, perhaps regarding any strategic purpose, or what actually transpired? Certainly this could be raised in a PC. You're right, Your Honor, but here, this Court can go ahead and decide it, because the record is pretty clear. It's actually clearer than most records. We know that the delays that were taken were a result of the State's failure to tender that discovery, because the State and defense counsel both signed on to that. We have a record from defense counsel that he couldn't complete pre-trial, or he was finished with his pre-trial, but he couldn't negotiate because they were waiting on this discovery. And given the State's negligence, and given what we know on the record, counsel is simply ineffective. And there aren't cases on point, because perhaps defendants haven't brought this position forward, and perhaps the record hasn't been as clear as it is here. But there has to be a boundary, Your Honor. I mean, how many days can the State wait before counsel is unreasonable? 200? 300? Here, you know, Garfield is in custody for 468 days. Admittedly, some of those should have been charged to a defendant, but certainly more than 120 days should have been charged to the State. This Court has no more questions. I don't believe so. Thank you, Your Honor. Mr. Garfield requests that this Court find that counsel is ineffective for agreeing to these continuances. Thank you. Counsel? Thank you, Your Honor. May it please the Court and counsel. I'll start with something Justice Chapman noted towards the end of the argument with regards to post-conviction process. Oftentimes, when it comes to ineffective assistance of counsel, we deal with facts that we know, but there's often also a set of facts that we don't know. And it's those facts that we don't know which relate to strategic decisions and rationales that defense counsel may have to agree to continuances, request a continuance, et cetera, that we just can't look at the court record here, because we're not privy, obviously, to the conversations around counsel's strategy. Thank you. On the 13th of November of 2012, when counsel had declared for the speedy trial and then withdrew that about 16 days later, we don't really know what happened there. At that point, at the time of the withdrawn request, there were 78 days of speedy trial time. We had a lapse against the State. So there's still 42 days left in the speedy trial period. We don't really know what transpired at that time, why there was an agreement to continue the case. We don't know if it had anything to do with DNA. I disagree with counsel when she says that the record is clear. The record is not clear whatsoever of what's going on and what the discussions were or how they related to the DNA or what impact the DNA had. But here's the thing, the point that I want to make. You know, when we talk about claiming benefactors as a counsel and we're talking about a due process violation, you have to have an identifiable circumstance which is a direct result of counsel's inaction or action, a violation took place. Now, the classic hallmark speedy trial ineffective assistance counsel claim is that day 121 rolls by, they don't file a motion for discharge, and that's almost per se ineffective assistance counsel because obviously the charges would be dismissed. Now… What's the difference here? Well, the difference here is this. Let's… What we're doing here is we're sort of going back in time. We're saying that what counsel did back in November of 2012, he shouldn't have done, and therefore becomes the argument that if counsel had not been, you know, agreeing to this continuance, then therefore based upon what transpired next March with Judge Barrett's civic complaint that the state's just not doing anything, you're not getting this DNA stuff tested, whatever, that, well, that set of circumstances would have inevitably been the case after November 2012. Okay? Well, forget for just a moment his motion and what went on. If you look just at the facts of how long this man was in the custody of the state, while the state is not pursuing the DNA, not asking for an extension, which it had a right to do under the statute, if the defense attorney would have simply filed a motion for discharge, he would have won. I mean, how can that not be prejudicial to this defendant? There's no motion for discharge. This attorney could have filed it and been successful. Your Honor, there were 78 days of time against the defendant, at or July and on November the 29th of 2012. The state had 42 more days to try this defendant. And what the point I'm trying to make is that let's say… But he spent over 400 days in trial or in custody, so… But not all those were attributable to the state. Well, that's the issue. It looks like they're alleging at least 266 days were attributable to the state. The reality is it's absolutely wrong. Well, tell me why. Well, okay, we'll do it this way. He was arrested on July the 10th of 2012. He was carried out on September the 6th. Sixty-two days were left at that point. From September the 6th… I've got July 9th. He was… I have July 9th. …incarcerated. I'm sorry. July 9th. July 10th. He was arrested July 9th. We'll give you July 9th. That's fine. So we'll say 63 days between the July 9th arrest and the appearance on the indictment. Okay? And the next day, there was… I'm sorry. On the 6th, there was a degree continuance to the 7th. On the 7th, there was a degree continuance to October the 4th. On the 4th, there was a degree continuance to November the 13th. So at this point, we have… I counted 62, but on the July 9th, we call it 63 days. And that's up to October 4th. That's up to November the 13th. Well, September 7th through October 4th, the continuance was attributed to the defendant. Correct. And then October 4th… So from October 4th to November 13th, zero days. Okay. I agree with you. Okay. So 63 days. So 63 days. At that point, he declares a speedy trial. Okay? Right? Up until July. Up until November 29th. So there's 16 more days. So you've got now 79 days. 79 days against the state. Correct. At that point, he withdrew his speedy trial request, and he mutually agreed for a trial date, April the 22nd, 2013. Every day after April the 22nd, there was a defense continuance until the trial. Therefore, he would need 79 days. So you're saying that from the day he withdrew the motion for speedy trial up through the April date is attributable to the defendant. It was a mutually agreed trial date, the continuance. And you take that from… The record? The record itself. Yes, correct. You'll see what we look at. I mean, we wouldn't be having this argument, Your Honor, if the argument was simply that the defense counsel has been effective for not filing a motion for discharge based on a speedy trial. That's clearly the argument to make. Isn't that the argument here? No. As I understand the argument is that had it not been for counsel's decision to withdraw that request for a speedy trial, that the state would not have been able to basically take the case to trial because of its lack of diligence in obtaining DNA evidence. So… And that's why I argue that to make an argument for the defendant would presuppose that the state would be incapable on November, as of November the 29th, if there had not been a motion or had not been an agreement to withdraw the speedy trial request and set the trial date in April, that the state still couldn't, in its 41 or 42 days remaining, obtain the DNA evidence. Or go to trial without it. Or go to trial without it, precisely. And that's the point. It's all built on speculation. It's built upon a presupposition that the state, based upon where they're at in March when Judge Harris said it was getting tested in the state, I don't, I don't prove the fact that the state wasn't really kind of doing what they're supposed to do. My attribution there is largely the fact that I just think the state may have gotten lazy, precisely because they had this long extension that they're dealing with that they haven't agreed to. But you can't say for certain that back in July of November the 29th, if defense counsel said, I'm not going to agree to withdraw the speedy trial. I want a trial in the next month and then in a week. But the state wouldn't have gotten DNA evidence, or wouldn't have done what they needed to do to establish proper due diligence to obtain the extension, or just gone to trial without it. Their case would have been nearly as good. But they could have. They had an eyewitness. They had statements from the defendant that were not inculpatory, but certainly were damaging to the defendant's position. So, and that's my point. If an argument comes down to, well, this was a bad decision by counsel on the 29th to withdraw that, we don't know why he withdrew it. We don't know. What we do know is that he never, on his record, complained about the state's delays in obtaining the DNA evidence. The court did. And as Judge Harris said, he just felt the state was routinely kind of taking a cat out of your hat, as far as getting DNA evidence done by the crime lab. But that's just sort of comments. I mean, it didn't really have any impact in this case one way or the other. So, again, as Justice Chapman stated, you know, if there are considerations that turn upon whether counsel's decision to withdraw that request ultimately had some long-term effects, then I think it's doubtful. But let's just say it was. These are the number one things that, for the record, is something that has to be dealt with in a post-conviction process. But, Justice Cates, there was no street trial violation here in the technical sense, but there were not 121 days or 120 days attributable against the state. And I don't think the defendant is actually making an argument. My interpretation of her argument in brief is that these are days that the state had spent essentially languishing about not getting the DNA testing done, which is how it's characterized here, not turning over to discovery. Well, my point in that regard, this is not a turnover to discovery case. This is essentially processing information to obtain DNA results to turn over to discovery. So the state's not hiding anything or keeping something from the defendant. It just wasn't getting done, in the defendant's and fellow counsel's view, in a timely manner. But I fear that there's some implication of wrongdoing on the part of the state. There's not wrongdoing apart from, you know. They just weren't hounding the lab to get it. They just weren't taking the lab to let them get that done on time. So that's our presentation. I hope I answered your questions adequately, and I appreciate your time. Thank you. Thank you, counsel. Counsel? Your Honors, I just have a couple points on our file. First, the state just asserted that the defense counsel had not complained about the state's failure to process the DNA and get that turned over. But actually, the record shows that he did on page 706 in the transcripts. The defense counsel complained that the state wasn't turning over discovery, and that was why he was submitting this demand for a speedy trial. And then the other main assertion here is that, and I think it all comes down to what happened on this, you know, November 13th hearing from counsel due to speedy trial demand. And they set a trial date. The state's now asserting that we don't know why that occurred. The record's pretty clear. Defense counsel, when asked about this, said, you know, I'm going to refer to the order because it's very detailed. And that particular order reads, and this is on page 58 of the record, by agreement with holding the speedy trial, the parties are still awaiting DNA testing evidence. So, again, this is a direct result of the fact that there's no DNA. It has not been tested by the state. And we know from the record that this is in November, but the state doesn't even call to really make sure that this testing even begins until March. And we couldn't contribute. It's like, well, maybe it's speculation. They would have hurried up and gotten it done. But in this case, we're two weeks away from trial, and the state still hasn't gotten it done. So, you know, it's impossible to be confident of those results. But certainly, whether the state could have gotten it done or not, the case would have been weaker without the DNA. And defense counsel should have been putting the state to its burden to accomplish that. And does the court have some other questions? I don't believe so. Thank you, Governor. We appreciate the briefs and arguments of counsel, and we'll take this case under advisement.